## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-00950-WJM-NRN

JANE DOE, through her mother and next friend MEGAN DOE,

Plaintiff,

v.

BRIGHTON SCHOOL DISTRICT 27J, et al.,

Defendants.

---

## DEFENDANTS' MOTION TO DISMISS
## PURSUANT TO FED. R. CIV. P. 12(b)(1) & (6)

---

Defendants Brighton School District 27J (the "District"), Chris Fiedler,[1] Shelly
Genereux, David Smith, Jenelle Weaver, and Desiree Quintanilla, through undersigned counsel,
move to dismiss the amended complaint in the above-captioned manner pursuant to Fed. R. Civ.
P. 12(b)(1) and (b)(6).

### STATEMENT OF CONFERRAL

This Court's practice standards discourage dismissal motions where the defect of the
pleading can be corrected by amendment. Undersigned counsel conferred with counsel for
Plaintiff several times over email and phone to discuss aspects of the original complaint (Doc. 1)
that could be the subject of a motion to dismiss pursuant to Fed. R. Civ. P. 12. In response,

---

[1] Chris Fiedler, Ph.D., is incorrectly listed as Chris "Fielder" in the Complaint. Jenelle Weaver is
incorrectly listed in the Complaint as "Janelle" Weaver.

Plaintiff amended her complaint on May 29, 2018 (Doc. 15). Even with that amendment, the Complaint still fails to state a claim for relief. Plaintiff opposes this Motion.

## LEGAL STANDARDS

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate where, as here, a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Courts review the sufficiency of the complaint by presuming that all alleged facts are true, construing them in a light favorable to plaintiff. *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers labels and conclusions, a formulaic recitation of the elements, or naked assertions devoid of factual enhancement is not sufficient to survive a motion to dismiss. *Id.* Allegations must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In the context of multiparty Section 1983 litigation, the complaint must "make clear exactly *who* is alleged to have done *what* to *whom*." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (emphasis in original).

Federal Rule of Civil Procedure 12(b)(1) allows a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), a court does not determine the merits of a plaintiff's case but, instead, determines whether it lacks authority to adjudicate the matter. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). Plaintiff bears the burden of establishing jurisdiction.

### RELEVANT ALLEGATIONS[2]

Plaintiff is a student at Brighton High School ("BHS") in Brighton, Colorado. In late September 2018 she was allegedly sexually assaulted by another student ("Student 1") at her home. (Doc. 15 ¶¶ 8-9.) At an unspecified time thereafter, Student 1 touched Plaintiff against her will on the BHS campus. (*Id.* ¶¶ 10-11.)

On October 30, Detective Rush-Lara with the Adams County Sheriff's Office told Plaintiff's mother ("Parent") that Student 1 had assaulted Plaintiff, that Student 1 had assaulted another BHS student ("Student 2") in May 2018, and that Detective Rush-Lara had told "BHS officials" in May 2018 about the prior assault involving Student 2. (*Id.* ¶ 12-15.)

The next day, a school counselor at BHS, Ryan Sullivan, met with Plaintiff and then called Parent and told her that Plaintiff "was not being herself and seemed very troubled." (Doc. 15 ¶ 22.) Parent told Mr. Sullivan that "something horrific had happened" to Plaintiff. (*Id.* ¶ 23.)

On Thursday, November 1, Detective Rush-Lara told BHS assistant principal David Smith that Student 1 had sexually assaulted Plaintiff and that Student 1 should be segregated from Plaintiff through a safety plan. (Doc. 15 ¶¶ 18-21.)

The following Tuesday, November 6, Mr. Sullivan called Parent, who said Plaintiff had been assaulted and was concerned that Student 1 was still enrolled at the school. (*Id.* ¶¶ 31-33.) Mr. Sullivan offered suggestions for Plaintiff to continue her coursework: leave class early to

---

[2] Defendants accept as true the allegations in Document 15 for purposes of this motion only and reserve the right to challenge these allegations should the case proceed.

avoid other students in the hallway, continue her coursework through the District's "homebound" program, or change schools. (*Id.* ¶ 33.)

That evening, Mr. Sullivan spoke with Parent over the phone. (Doc. 15 ¶ 34-35.) Parent stated that Student 1 was "intimidating" Plaintiff and that his friends "were talking loudly at BHS, saying that [Plaintiff] and girls were trying to ruin [Student 1]'s life." (*Id.* ¶¶ 37-40.)

On Wednesday, November 7, Parent spoke with Mr. Sullivan and discussed options for Plaintiff to continue her coursework. (Doc. 15 ¶ 43.) Parent also called and left messages for Jenelle Weaver, an assistant principal at BHS, Desiree Quintanilla, the District's intervention coordinator, and Dr. Richard Patterson, the District's assistant superintendent for student achievement and professional learning, in which she reported the alleged assault and harassment by other students. (*Id.* ¶¶ 42, 45-48.) Plaintiff also spoke with Mr. Sullivan that day and said that she felt like she was "being punished" for speaking up. (*Id.* ¶ 44.)

Ms. Weaver called Parent back that day, and Parent said that Plaintiff had been assaulted and was being "intimidated" by Student 1 and his friends. (*Id.* ¶ 52.) Ms. Weaver offered the same options as had Mr. Sullivan (homebound, move to a new school, and leave class early to avoid other students in the hallway), but Parent was "dissatisfied" with those options. (*Id.* ¶¶ 52-55.) Ms. Weaver said BHS would not discipline Student 1 until the criminal investigation was over. (*Id.* ¶¶ 54-57.) Parent emailed Mr. Sullivan that the school was "making [Plaintiff] the victim" and emailed Mr. Smith that the school was causing Plaintiff harm. (*Id.* ¶ 58-60.)

Ms. Quintanilla called Parent back the next day, November 8. (*Id.* ¶ 61.) Parent described Plaintiff's assault and requested that Student 1 be disciplined. (*Id.*) Ms. Quintanilla initially stated that Student 1 could not be suspended, but then called Parent back to confirm that Student

1 had been suspended that day. (*Id.* ¶ 62-64.) Dr. Patterson also called Parent back on November 8 and told Parent that Ms. Quintanilla would handle the situation. (*Id.* ¶ 63.)

On Friday, November 9, Mr. Smith called Parent back and told her that he and Ms. Weaver were creating an education plan for Plaintiff. (Doc. 15 ¶ 67.) Parent said Plaintiff was being "intimidated" by other students at BHS. (*Id.*) Mr. Smith said he had not known about the intimidation but said Plaintiff should contact BHS officials if that happens again. (*Id.* ¶ 68.) Parent also that day spoke with Ms. Quintanilla and Ms. Weaver. (*Id.* ¶ 69-72.) Parent stated that Plaintiff was now terrified over the "fallout of [Student 1]'s suspension." (*Id.*)

Later that month, Parent and Plaintiff met with Ms. Weaver, Ms. Quintanilla, and Mr. Smith at BHS to discuss an education and safety plan for Plaintiff. (*Id.* ¶¶ 73-82.) Parent said that another student had called Plaintiff "a slut" in the hallway and that Plaintiff has been "bullied" at school since the alleged assault. (*Id.* ¶¶ 73-80.)

On December 4, 2018, Student 1 erroneously believed his suspension was over and returned to BHS for a several hours. (*Id.* ¶¶ 84-86.) There is no allegation that Plaintiff was on campus during this time. (*Id.*) Ms. Weaver called Parent that day and told her that Student 1 had been on campus. (*Id.* ¶¶ 86-88.) Parent told Ms. Weaver that a female student in Plaintiff's math class had asked Plaintiff about Student 1 and that the math teacher had intervened. (*Id.* ¶ 86.) Later that day, Parent left a message for Ms. Weaver that Student 1's car had been spotted in the school parking lot and claimed that Student 1 had been on campus for lunch with his friends. (*Id.* ¶ 88.) Ms. Weaver called Parent back and told Parent that the BHS school resource officer, a Brighton police officer assigned to the school, had been given a description of Student 1's car and would "hand out a citation for trespass" if his car is seen on campus. (*Id.* ¶¶ 90-91.)

The following day, December 6, 2018, Parent spoke with Ms. Quintanilla over the phone. (*Id.* ¶¶ 94-97.) Parent told Ms. Quintanilla that she was unhappy with BHS for the lack of protection over her daughter. (Doc. 15 ¶ 95.) Ms. Quintanilla told Parent that "it is almost impossible" to ensure that people won't come to the BHS campus, that a "miscommunication" had led to Student 1 erroneously coming to campus for a few hours, that the safest option for Plaintiff was to finish her coursework at home, and that while Student 1 had been on campus for a few hours, he was told to leave as soon as BHS officials found out he was there. (*Id.* ¶¶ 97-98.)

Parent told Ms. Weaver in early January 2019 that Plaintiff had been harassed through social media. (*Id.* ¶¶ 103-04.) In early February, Parent told Ms. Weaver that Student 1's girlfriend ("Student 4") had messaged Plaintiff on Instagram and stated, "What did you want to gain from accusing [Student 1] of all the things you did [?]" and "I hope no one ever forgives you." (*Id.* ¶¶ 105-07.) Plaintiff attempted suicide after receiving this message. (*Id.* ¶ 109.) In response, Mr. Smith and Ms. Weaver ordered Student 4 not to contact Plaintiff. (*Id.* ¶ 110.)

## ARGUMENT

Plaintiff asserts five claims against the Defendants: Claims 1 and 2 arise under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, and allege sex discrimination in the form of "deliberate indifference" and "retaliation" against the District; Claims 3 and 4 arise under 42 U.S.C. § 1983 and allege the individual defendants violated the Equal Protection Clause of the Fourteenth Amendment through "deliberate indifference" to allegations of harassment; and Claim 5 seeks declaratory and injunctive relief to enjoin discriminatory conduct.

I.     **Plaintiff has not plausibly alleged sex discrimination under Title IX against the School District (Claim 1).**

Title IX provides that "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).[3] A school district may be liable under Title IX if (1) it has actual knowledge of and (2) is deliberately indifferent to (3) harassment that is so severe, pervasive, and objectively offensive as to (4) deprive access to the educational benefits or opportunities provided by the school. *Rost ex. rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008).

A.     **Plaintiff does not plausibly allege that "appropriate persons" in the District had actual knowledge and control of any discriminatory conduct before November 7, 2018.**

To state a claim for relief under Title IX, a complaint must allege that an "appropriate person" had actual knowledge of discrimination yet remained deliberately indifferent to it. *Gebser v. Lago Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

An "appropriate person" is someone whose actual knowledge "is functionally equivalent to the school district's actual knowledge." *Rosa v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 660 (5th Cir. 1997) (cited in *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1247 (10th Cir. 1999). Whether a school district employee is an "appropriate person" depends upon the role assigned to the employee by the district's governing school board. *Murrell*, 186 F.3d at 1247. As the *Rosa* court explained, "[t]his inquiry circumscribes those school employees in the chain of command

---

[3] Only the District, as a public entity, can be held liable for Title IX violations. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) ("Title IX reaches institutions and programs that receive federal funds, . . . but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals, . . . .").

whom the school board has appointed to monitor the conduct of other employees and, as distinguished from reporting to others, remedy the wrongdoing itself." 106 F.3d at 660; *see Murrell*, 187 F.3d at 1247 (person must be "invested by the school board with the duty to supervise the harasser and the power to take action that would end such abuse").

Here, Plaintiff has not alleged facts from which the Court can infer that "appropriate persons" in the District had actual knowledge and control of discriminatory conduct before November 7, 2018, when Parent reported to assistant principals David Smith and Jenelle Weaver, who supervise teachers and have authority to discipline students, that Plaintiff had been sexually assaulted and was being harassed at school by other students. (Doc. 15 ¶¶ 53, 60.)

The Complaint alleges that Ryan Sullivan, a school counselor, had actual knowledge of alleged harassment as of November 6, 2018. (Doc. 15 ¶ 30-33.) Mr. Sullivan is not an "appropriate person," as there is no allegation that he supervises other staff or has authority to take any action to remedy alleged abuse, including discipling students. *See Warren v. Reading Sch. Dist.*, 565 F.3d 450, 458 (8th Cir. 2009) (guidance counselor not appropriate person). The same is true for Desiree Quintanilla, to whom Parent reported the alleged assault and harassment on November 7, 2018. (Doc. 15 ¶ 46.) There is no allegation that Ms. Quintanilla supervises District or school staff or has authority to remedy any alleged abuse, including student discipline.

The Complaint alleges "BHS officials" knew about Student 1's alleged assault of Student 2 in May 2018. (*Id.* ¶ 14-15). This allegation is speculative: it does not specify who these officials are, let alone allege facts from which the Court could infer the "BHS officials" are "appropriate persons" whose actions can be imputed to the District. *See Collins*, 656 F.3d at 1215 (the complaint must "make clear exactly *who* is alleged to have done *what* to *whom*"). Nor

8

is it alleged that Plaintiff experienced discrimination in connection with Student 1's assault of a different student, or the requisite predicate that District officials would have known about it if she had. (Doc. 15 ¶¶ 129-55.)

The Complaint alleges Mr. Smith knew by November 1, 2018 that Plaintiff had been assaulted off-campus. (*Id.* ¶ 135). This allegation is insufficient, however, because a school district cannot be liable for discriminatory conduct it does not control or authorize. *See Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 646-47, 659-60 (1999) (a school district is not liable for discriminatory conduct it does not control or authorize); *Rost*, 5111 F.3d at 1120 (district not liable for assault occurring off-campus outside of district's knowledge or control). Here, Mr. Smith had no control over that alleged assault, which occurred at Plaintiff's home.

Plaintiff alleges that, after she was allegedly assaulted in September 2018, Student 1 touched her against her will on the BHS campus (Doc. 15 ¶¶ 10-11), but she does not allege that any District or BHS staff, let alone "appropriate persons," were aware of this touching. (*Id.*) It is not alleged that there was any further contact between Plaintiff and Student 1 after he was suspended on November 8th.

Thus, Plaintiff has failed to allege that any "appropriate person" in the District had actual knowledge of any discriminatory conduct before November 7, 2018, when Parent reported to BHS assistant principals Smith and Weaver that Plaintiff was being harassed at school for coming forward about the assault.

**B.    Plaintiff has not plausibly alleged any specific "severe, pervasive, and objectively offensive" harassment.**

Alleged discrimination must be sufficiently "severe, pervasive, and objectively offensive" to constitute a violation of Title IX. *Rost*, 511 F.3d at 119. The U.S. Supreme Court

has emphasized that students "often engage in insult, banter, shoving, pushing, and gender-specific conduct" that may be upsetting but does not rise to "severe, pervasive, and objectively offensive" conduct. *Davis*, 526 U.S. at 651-52. To be "pervasive," harassment must be "more than episodic" and "must be sufficiently continuous and concerted." *Lopez v. Webster Cent. Sch. Dist.*, 682 F. Supp. 2d 274, 285 (W.D.N.Y. 2010). A single instance of one-one-one harassment is not sufficiently severe, pervasive, and objectively offensive unless it is "serious enough to have the systemic effect of denying the victim equal access to an educational program or activity." *Estate of D.B. v. Thous. Is. Cent. Sch. Dist.*, 327 F. Supp. 477, 530 (N.D.N.Y. 2018).

Plaintiff alleges a student called her a "slut" in the hallway. (Doc. 15 ¶ 75.) Courts have concluded that this type of name-calling, while inappropriate and likely distressing, does not rise to the level of "severe, pervasive, and objectively offensive" conduct under Title IX. For instance, in *Vidovic v. Mentor City Sch. Dist.*, 921 F. Supp. 2d 775, 798 (N.D. Ohio 2013), a federal court concluded that calling a high-school girl a "slut," "whore," and "lesbian," while "clearly inappropriate" and likely "distressing to any teen-age girl," is "exactly the type of comments and name-calling the [U.S.] Supreme Court has indicated do not rise to the level of severe and pervasive harassment."

Plaintiff also alleges that other students told her that she and other girls are "ruining [Student 1]'s life" by coming forward about the assault, and that Student 1's girlfriend stated, "I hope no one ever forgives you." (*Id.* ¶¶ 37-40, 105-07.) These statements are merely "insults, banter, or teasing" that may be "upsetting" but which do not constitute severe or objectively offensive conduct. *Davis*, 526 U.S. at 651-52.[4] She further alleges that another female student

---

[4] There is also no allegation that the comment by Student 1's girlfriend occurred on District property,

tried to "talk" to her about Student 1 in math class, which caused her distress. (Doc. 15 ¶ 86.)
Interactions between high school students that may be distressing to the alleged victim do not
constitute sex discrimination under Title IX. *See, e.g.*, *Hunter v. Barnstable Sch. Comm.*, 456 F.
Supp. 2d 255, 264 (D. Mass. 2006) (alleged victim forced to high-five her alleged rapist in gym
class); *Wilson v. Beaumont Indep. Sch. Dist.*, 144 F. Supp. 2d 690, 694 (E.D. Tex. 2001) (school
not liable under Title IX even where it failed to ensure alleged rapist could not contact victim).

Plaintiff also vaguely alleges that she was "intimidated" and "bullied" by other students,
including Student 1. (Doc. 15 ¶¶ 52-55, 67-68, 73-80.) Courts have rejected similar allegations as
too conclusory or vague to constitute severe, pervasive, and objectively offensive harassment.
*See, e.g.*, *Gabrielle M. v. Park Forest – Chicago Heights Sch. Dist.*, 315 F.3d 817, 822 (7th Cir.
2003) (vague and unspecific allegations of bullying "cannot provide a basis to determine whether
that conduct was severe, pervasive, and objectively offensive"); *Doe v. Hamilton Cty. Bd. of
Educ.*, 329 F. Supp. 3d 543, 557-58 (E.D. Tenn. 2018) ("[G]eneralized bullying—motivated by
personal animus, opportunism, or social status—is not the sort of conduct proscribed by Title
IX."); *see also Rost*, 511 F.3d at 1119 (victim's statement that "the boys were bothering me" not
sufficient to put district on notice that victim was being sexually harassed).

Thus, because Plaintiff has failed to allege "severe, pervasive, and objectively offensive"
harassment, she has failed to state a claim for violation of Title IX against the District.

---

during school hours, or otherwise under District control.

**C.      Plaintiff has not plausibly alleged that District officials were deliberately indifferent to allegations of harassment.**

To be deliberately indifferent, District officials must have "consciously acquiesced" to conduct in a manner that was "clearly unreasonable." *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1250 (10th Cir. 1999). They must also have "intended the discrimination to occur." *Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 141 (2d Cir. 1999). Deliberate indifference "is a difficult standard to meet," as it requires more "than negligence, or even gross negligence." *Barrie v. Grand Cnty., Utah*, 119 F.3d 862, 869 (10th Cir. 1997). The complaint must allege facts showing an affirmative link between alleged indifference and the harm that befell Plaintiff. *Serna v. Colo. Dep't of Corr.*, 455 F.3d at 1146, 1154 (10th Cir. 2006).

Plaintiff alleges District officials "fail[ed] to take any action" to stop the alleged harassment of Plaintiff at BHS. (Doc. 15 ¶ 139.) The allegations, taken as true, show that District officials attempted to address Plaintiff's concerns, including:

- Promptly returning Parent's phone calls and voicemails to District officials on or around November 7, 2018 (Doc. 15 ¶¶ 34-68);

- Speaking over the phone and meeting with Plaintiff and Parent several times to discuss the alleged assault, alleged harassment, and an education plan to enable Plaintiff to continue her coursework (*id.* ¶¶ 12-18, 22-23, 30-35, 37-40, 44, 52-57, 61-64, 67-70, 73-82, 86-88, 90-91, 94-98, 103-04, 110);

- Suspending Student 1 shortly after Parent reported the alleged assault and harassment and requested that Student 1 be suspended (*id.* ¶¶ 61-64.)

- Removing Student 1 from BHS immediately when staff discovered that Student 1 had erroneously returned to BHS during his suspension and assuring Plaintiff and Parent that the District would cite Student 1 for trespassing if he returned to campus again (*id.* ¶¶ 90-91, 97-98);

- Offering Plaintiff alternatives to continuing her coursework as usual at BHS given the alleged assault and harassment (*id.* ¶¶ 31-33, 52-55);

- Issuing a no-contact order between Plaintiff and Student 4 in response to Student 4 contacting Plaintiff on social media (*id.* ¶¶ 110); and

- Intervening when another student was "asking" Plaintiff about Student 1's whereabouts during math class (*id.* ¶¶ 86);

Although Parent was not satisfied with the options District officials proposed, her preference for a different solution does not amount to deliberate indifference. *See, e.g.*, *Rost*, 511 F.3d at 1124 ("The fact that Ms. Rost rejected alternatives the district provided . . . does not reflect on the appropriateness of the district's responses . . . ."); *Deweese v. Bowling Green Indep. Sch. Dist.*, 709 Fed. App'x 775, 778 (6th Cir. 2017) (school's remedial plan for sexual assault victim was not clearly unreasonable even though not "preferred choice"); *Yap v. Oceanside Union Free Sch. Dist.*, 303 F. Supp. 2d 284, 295 (E.D.N.Y. 2004) (not deliberately indifferent for refusing to transfer student experiencing race-based harassment at school).

While the District did not discipline Student 1 the previous school year for misconduct towards a different student, this response is not clearly unreasonable for several reasons. First, Plaintiff "does not have a right to specific remedial measures," including whether an alleged assailant is disciplined. *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 666 (2d Cir. 2012). Second, school officials were notified of the earlier alleged assault from law enforcement during its investigation of that assault. (Doc. 15 ¶¶ 18-21.) It is not unreasonable to forego disciplining a student who is also under investigation by police and criminal charges are possible. *See Rost*, 511 F.3d at 1121 (not unreasonable for school to not discipline alleged perpetrator under police investigation). Third, there is no dispute that Plaintiff was allegedly assaulted off-campus, beyond the District's control. (Doc. 15 ¶¶ 8-9.) Thus, even if BHS had disciplined Student 1 the prior school year, there is no allegation that this discipline would have prevented the alleged

assault against Plaintiff at her home several months later. Fourth, the District suspended Student

1 shortly after Parent reported the assault against Plaintiff to District officials, and there is no

allegation that Student 1 interacted with Plaintiff, on or off-campus, after that suspension.

These allegations, separately or collectively, do not show that District officials

"consciously acquiesced" to harassment, that their responses were "clearly unreasonable," or that

they "intended the discrimination to occur." *Murrell*, 186 F.3d at 1250; *Gant*, 195 F.3d at 141.[5]

## II.    Plaintiff has not plausibly alleged that the District engaged in retaliatory conduct in violation of Title IX (Claim 2).

Retaliatory conduct is considered a form of "discrimination" prohibited under Title IX.

*Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005). To recover for retaliation under

Title IX, Plaintiff must prove (1) she engaged in protected activity, (2) the District had

knowledge of the protected activity, (3) the District took materially adverse school-related action

against Plaintiff, and (4) there was a causal connection between the protected activity and the

adverse action. *Tackett v. Univ. of Kan.*, 234 F. Supp. 3d 1100, 1109 (D. Kan. 2017). "A causal

connection is established where the plaintiff presents evidence of circumstances that justify an

inference of retaliatory motive, such as protected conduct closely followed by adverse action."

*Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1091 (10th Cir. 2007). Further, there must be

evidence of "retaliatory animus," meaning "intentional conduct aimed at inflicting injury or harm

taken because of a complaint about a perceived form of prohibited conduct." *Id.*

---

[5] While Plaintiff alleges that District officials "refused" to evaluate her for a Section 504 Plan or for
IDEA services (Doc. 15 ¶¶ 69, 77), she does not allege that this "refusal" constitutes sex-based
discrimination (*id.* ¶¶ 129-55), nor is there any authority to support that claim if she had.

Plaintiff alleges the District "retaliated" against her by offering her options she didn't like and not suspending her alleged perpetrator sooner. (Doc. 15 ¶¶ 146-55.) She also vaguely alleges that she "felt like she was being punished" for coming forward about the alleged assault. (*Id.*)

There is no basis to infer from these allegations, taken as true, that the District was motivated by retaliatory animus in offering the options it did or in not suspending Student 1 sooner, which it did shortly after Parent reported the alleged assault and harassment. *See Tackett*, 234 F. Supp. 3d at 1109 (plaintiff failed to sufficiently allege that negative actions following her outcry of alleged assault was motivated by retaliatory animus); *see also Zeno*, 702 F.3d at 666 (Plaintiff "does not have a right to specific remedial measures"). Further, the retaliation claim focuses entirely on Plaintiff and Parent's interactions with Mr. Sullivan, who, as discussed, is not an "appropriate person" whose actual knowledge of harassment can be imputed to the District. *See Warren*, 565 F.3d at 458 (counselor not appropriate person).

For these reasons, Plaintiff has failed to state a claim against the District for sex discrimination and retaliation in violation of Title IX.

### III. The individual defendants are entitled to qualified immunity (Claims 3 and 4).

Qualified immunity protects government officials from civil liability if their conduct "does not violate clearly established statutory or constitutional rights . . . ." *A.M. v. Holmes*, 830 F.3d 1123, 1134 (10th Cir. 2016). The doctrine of qualified immunity protects government officials from liability unless a reasonable person, possessing the same facts, would have known that he or she was violating clearly established law. *Leverington v. City of Colo. Springs*, 643 F. 3d 719, 732 (10th Cir. 2011). In resolving a motion to dismiss based on qualified immunity, a court must consider whether the alleged facts make out a violation of a constitutional right, and

whether that right was clearly established at the time of the alleged misconduct. *Id*. at 732. The qualified-immunity test "is a very high burden for [a] plaintiff" to meet. *Valdez v. Roybal*, 186 F. Supp. 3d 1197, 1256 (D. N.M. 2016).

**A.    Plaintiff has not plausibly alleged deliberate indifference.**

Section 1983 does not confer any substantive rights. *Gaines v. Stenberg*, 292 F.3d 1222, 1225 (10th Cir. 2002). Instead, it provides a mechanism to enforce federal rights. *Id.* Thus, claims under Section 1983 require an underlying constitutional violation, *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986), presumably here the Equal Protection claims against the individual defendants in this case.

Defendants Fiedler, Genereux, Smith, and Weaver are supervisors. Under Section 1983, supervisors are not liable for subordinates' conduct. *Iqbal*, 556 U.S. at 676. Instead, supervisors may be held liable only when their own conduct violates federal law. *Id.* Thus, the complaint must allege the supervisors were aware of facts from which they could infer that Plaintiff was at substantial risk of constitutional harm, that they made that inference, and remained deliberately indifferent to it. *Murrell*, 186 F.3d at 1250.

To be deliberately indifferent, the officials must have "consciously acquiesced" to conduct in a "clearly unreasonable" manner and "intended the discrimination to occur." *Murrell*, 186 F.3d 1238, 1250; *Gant*, 195 F.3d at 141. Deliberate indifference "is a difficult standard to meet," as it requires more "than negligence, or even gross negligence." *Barrie*, 119 F.3d 862, 869. In addition, the complaint must allege facts showing an affirmative link between the alleged indifference and the harm that befell Plaintiff. *Serna*, 455 F.3d at 1146.

16

### 1.    Chris Fiedler and Shelly Genereux

The only allegation against Dr. Fiedler, the District superintendent, is that, because "his office" received a phone call by Parent, he would have received her message and, thus, "would have known" of alleged harassment "upon information or belief. (Doc. 15 ¶¶ 47-48.) There are no allegations that Parent or anyone else informed Dr. Fiedler of alleged harassment of Plaintiff. Likewise, Plaintiff alleges that, "upon information and belief," the principal of BHS, Shelly Genereux, "would have been informed of Student 1's prior sexual assault and the intimidation and harassment [Plaintiff] had been experiencing" at BHS. (*Id.* ¶¶ 114-15.) There is no allegation that Parent or anyone else informed Principal Genereux of alleged harassment of Plaintiff.

Taken as true, these allegations—based only on speculation—do not meet the demanding *Iqbal* pleading standard. *See Twombly*, 550 U.S. 544, 555 (2007) (allegations must "raise a right to relief above the speculative level"). The only allegation concerning Ms. Genereux, that she "would have known" of alleged harassment based solely on her position as principal of BHS, is insufficient to state a claim against her. *See, e.g.*, *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291 (1998) (holding that a high school principal's knowledge that a teacher had made inappropriate comments during class "was plainly insufficient to alert the principal to the possibility that [the teacher] was involved in a sexual relationship with a student"). Here, there is no allegation that Dr. Fiedler or Ms. Genereux had knowledge of any remarks that could be construed as sex-based harassment. Even assuming they did know about harassment as alleged, there is no allegation that Dr. Fiedler or Ms. Genereux consciously ignored alleged harassment or intended for discrimination to occur. *See Gant*, 195 F.3d at 141 (district officials must "intend" for discrimination to occur). Thus, the claims against them fail as a matter of law.

2.      **Desiree Quintanilla**

Plaintiff alleges five contacts with Ms. Quintanilla: (1) speaking with Parent the day after she received Parent's voicemail about the alleged assault; (2) speaking with Parent that evening to confirm that Student 1 had been suspended; (3) speaking with Parent and Ms. Weaver over the phone the next day to discuss an education plan for Plaintiff; (4) meeting with Parent, Plaintiff, Mr. Smith, and Ms. Weaver shortly thereafter to discuss an education plan for Plaintiff; and (5) speaking with Parent over the phone two days after Student 1 erroneously returned to BHS for a few hours. (Doc. 15 ¶¶ 61-64, 69-82, 94-98.)

The allegations related to these events, accepted as true, do not state a claim for the necessary element of deliberate indifference. Ms. Quintanilla promptly returned Parent's initial call on November 7—the first time Ms. Quintanilla learned of the alleged assault or harassment—and spoke and met with Parent several times to discuss the alleged assault, alleged harassment, and an education plan for Plaintiff so she could continue her coursework. (*Id.*) These alleged actions, accepted as true, are neither "clearly unreasonable" nor do they raise an inference that Ms. Quintanilla intended discrimination to occur.

While Plaintiff has named Ms. Quintanilla as a defendant and lists her name in the title of her two claims against the individual defendants (Claims 3 and 4), Plaintiff fails to identify Ms. Quintanilla in any of the allegations supporting those claims. (*See* Doc. 15 ¶¶ 156-97.) Thus, Plaintiff has failed to sufficiently allege how or why Ms. Quintanilla should be liable for sex-based discrimination. *See Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1159, 1163 (10th Cir. 2007) ("[T]o state a claim in federal court, a complaint must explain what each defendant

did to him or her; when the defendant did it, how the defendant's actions harmed him or her; and, what specific legal right the plaintiff believes the defendant violated.").

### 3.    David Smith and Jenelle Weaver

Plaintiff alleges that Mr. Smith and Ms. Weaver were deliberately indifferent to allegations of assault by (1) failing to discipline Student 1 the previous school year when he allegedly assaulted Student 2 off-campus, (2) "failing to take any action" to stop alleged harassment of Plaintiff, and (3) not providing suitable options for Plaintiff to enable her to continue her coursework. (Doc. 15 ¶¶ 162-97.)

These allegations, accepted as true, do not state a claim for the necessary element of deliberate indifference. Plaintiff fails to allege facts from which this Court could infer that a reasonable person, possessing the same facts as Mr. Smith and Ms. Weaver, "consciously acquiesced" to conduct in a "clearly unreasonable" manner and "intended the discrimination to occur." *Murrell*, 186 F.3d 1238, 1250; *Gant*, 195 F.3d at 141.

Rather than consciously acquiesce to allegations of harassment, Ms. Weaver and Mr. Smith addressed Plaintiff and Parent's concerns, met and spoke with Parent and Plaintiff several times to respond to the alleged assault and harassment and education plan for Plaintiff. (*See* Argument § I.C., *supra*.). The fact that Plaintiff and Parent may have preferred a different solution does not amount to deliberate indifference. *Rost*, 511 F.3d at 1124; *Deweese*, 709 Fed. App'x at 778; *Yap*, 303 F. Supp. 2d at 295.

Plaintiff has also not alleged facts from which this Court could infer that Mr. Smith or Ms. Weaver caused Plaintiff harm by not suspending Student 1 sooner than November 8, 2018. Student 1 was suspended and removed from school (a) five school days after Detective Rush-

Lara allegedly told Mr. Smith that Student 1 had assaulted Plaintiff at her home, and (b) the day

after Parent reported to District officials that Plaintiff was allegedly being harassed at school.

(Doc. 15 ¶¶ 61-64.) Even assuming, for purposes of this argument, that Mr. Smith or Ms.

Weaver were the "BHS officials" to whom Detective Rush-Lara reported the alleged assault of

Student 2 in May 2018 (*id.* ¶ 14-15), they would have known only that Student 1 was under

investigation for assaulting a different student than Plaintiff and would have had no reason to

believe that Student 1 posed an unreasonable risk of harm to Plaintiff.[6]

In summary, Plaintiff has not alleged facts, taken as true, showing that any of the

individual defendants were deliberately indifferent to reports of sex discrimination. Plaintiff,

thus, fails to state a claim under Section 1983 for violation of her constitutional rights.

**IV.    Plaintiff lacks standing to recover equitable relief (Claim 5), and the allegations, accepted as true, do not plausibly state a claim for such relief.**

In her fifth claim, Plaintiff seeks injunctive and declaratory relief pursuant to 42 U.S.C.

§ 1983 and 28 U.S.C. §§ 2201-2202. This claim fails for two reasons.

First, Plaintiff lacks standing to pursue her equitable claims, as she has not alleged a

likelihood of future harm. *See Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991) (court lacked

jurisdiction over equitable claim where plaintiff did not allege future harm); *Burr v. Robinson*,

162 F.3d 1172, *1 (10th Cir. 1998) (unpublished) (same). Thus, the Court lacks jurisdiction over

this claim and should dismiss the claim pursuant to Rule 12(b)(1).

Second, Plaintiff's claim for injunctive and declaratory relief is derivative of her claims

alleging violation of the Equal Protection Clause. (Doc. 15 ¶¶ 198-203.) She seeks declaratory

---

[6]Just as Parent had no reason to suspect that Student 1 posed an unreasonable risk of harm to her daughter until the end of October when law enforcement informed her about Student 1's sexual assault of her daughter in her home six weeks earlier, Parent did not report the sexual assault to school officials until November 7th.

and injunctive relief under the same statute—Section 1983—that is the basis for her underlying claims. Because those underlying claims are not viable, there is no basis for injunctive or declaratory relief. *See Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 242 (1st Cir. 2013) (dismissing "derivative" equitable claims after dismissal of underlying claims); *Gates v. Sprint Spectrum, L.P.*, 523 F. Supp. 2d 1287, 1291 (D. Kan. 2007) (dismissing "derivative" claim for injunctive relief given dismissal of underlying trespass claim).

## CONCLUSION

Plaintiff has not plausibly alleged sex discrimination against the District under Title IX or against individual defendants Chris Fiedler, Shelly Genereux, Desiree Quintanilla, David Smith, and Jenelle Weaver under Section 1983. Those claims, along with the equitable claim derivative of those underlying claims, should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff's fifth claim seeking equitable relief should also be dismissed for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

Respectfully submitted this 24th day of June 2019.

*s/Elliott V. Hood*
M. Gwyneth Whalen
Elliott V. Hood
CAPLAN AND EARNEST LLC
3107 Iris Avenue, Suite 100
Boulder, Colorado 80301
303-443-8010
gwhalen@celaw.com; ehood@celaw.com
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Igor Raykin, Esq.
Michael Nolt, Esq.
Tyler Jeffery, Esq.
igor@coloradolawteam.com
michael@coloradolawteam.com
tyler@coloradolawteam.com
Attorneys for Plaintiff


*s/Shelley McKinstry*
Shelley McKinstry