IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-00950-WJM-NRN

JANE DOE, through her mother and next friend MEGAN DOE,

Plaintiff,

v.

BRIGHTON SCHOOL DISTRICT 27J, et al.,

Defendants.

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Defendants 27J School District (the "District"), Chris Fiedler, Shelly Genereux, David Smith, Jenelle Weaver, and Desiree Quintanilla, through undersigned counsel, submit this Reply in support of their motion to dismiss (Doc. 28).

### ARGUMENT

**I.  Plaintiff does not plausibly allege that appropriate persons in the District had actual knowledge and control of discriminatory conduct before November 7, 2018.**

Plaintiff does not plausibly allege that "appropriate persons" in the District—those individuals whose knowledge can be imputed to the District itself—had actual knowledge or control of alleged discriminatory conduct before November 7, 2018, when Parent told assistant principals Jenelle Weaver and David Smith that Plaintiff had been assaulted off-campus and that other students were harassing Plaintiff at school. (Doc. 28 at 7-9.)

Plaintiff contends that Mr. Smith knew by November 1, 2018 that Plaintiff had been assaulted off-campus. (Doc. 33 at 2-3.) But, as explained in the Motion, the District cannot be liable for conduct it does not control or authorize,[1] and there is no allegation—nor could there be—that Mr. Smith or any other District official controlled or authorized that off-campus assault. (Doc. 28 at 9.) Plaintiff contends that Mr. Smith could have taken remedial action against Student 1 then. (Doc. 33 at 3.) It is not material whether Mr. Smith could have disciplined Student 1 on November 1. What matters is that, on November 1, Mr. Smith could not remedy the discriminatory conduct he knew about: an alleged assault at Plaintiff's home. *See Rost*, 511 F.3d at 1120 (district not liable for discriminatory conduct off-campus, outside district's control).

Plaintiff contends that Ryan Sullivan, the school counselor, knew by November 6, 2018 that Plaintiff was being harassed at BHS. (Doc. 33 at 3.) But, as explained in the Motion, Mr. Sullivan is not an "appropriate person" because there is no allegation that he supervises other staff or has authority to remedy alleged abuse. (Doc. 28 at 8.) Plaintiff asserts that the Tenth Circuit concluded in *Rost* that "disclosure to a counselor gave the district actual knowledge of student-on-student sexual harassment." (Doc. 33 at 3) (citing *Rost*, 511 F.3d at 1117, 1120).) That is not accurate. In *Rost*, the Tenth Circuit concluded that district staff, including two school counselors, did not have actual knowledge of alleged sexual harassment. *Rost*, 511 F.3d at 1119-20. The *Rost* court never analyzed whether any such staff were "appropriate persons" or whether, if they had actual knowledge, that knowledge could be imputed to the school district. *Id.* In fact, it is well established that guidance counselors are not appropriate persons for Title IX liability. *Warren v. Reading Sch. Dist.*, 278 F.3d 163, 173-74 (3d Cir. 2002).[2]

---

[1] *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 646-47 (659-60) (1999); *Rost v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1120 (10th Cir. 2008).

[2] In the Motion, Defendants erroneously cited to "565 F.3d 450, 458 (8th Cir. 2009)," which is the cite for *Plamp v. Mitchell School District*, not *Warren*. Defendants intended to cite to *Warren*, which is on point.

Equally important is what Plaintiff does not contest in her Response. Plaintiff does not contest that her allegation that "BHS officials" knew about Student 1's alleged assault of Student 2 in May 2018 is insufficiently speculative. (*Compare* Doc. 28 at 8-9 *with* Doc. 33 at 2-4.) Plaintiff does not dispute that Desiree Quintanilla, who allegedly knew of alleged harassment on November 7, does not qualify as an "appropriate person." (*Id.*) And Plaintiff does not contest that any "appropriate person" was aware of instances where Student 1 allegedly touched Plaintiff against her will on the BHS campus. (*Id.*)

**II.     Plaintiff has not plausibly alleged specific instances of "severe, pervasive, and objectively offensive" harassment.**

Plaintiff's allegations of harassment are either too conclusory or vague to constitute objectively offensive harassment or amount to teasing, banter, or uncomfortable interactions between high-school students that do not rise to the level of "severe, pervasive, and objectively offensive" conduct under Title IX. (Doc. 28 at 9-11.)

Plaintiff argues that her allegations of "bullying" and "intimidation" are sufficiently specific because they are more specific than the allegations in *Gabrielle M. v. Park Forest – Chicago Heights Sch. Dist.*, 315 F.3d 817, 822 (7th Cir. 2003), and that the analysis in that case was at the summary-judgment phase. (Doc. 33 at 6.) This argument misses the mark. At the dismissal stage, Plaintiff must, at the very least, allege "the right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Her vague allegations of "bullying," intimidation," and "harassment" do not meet this requirement. Further, these allegations, taken as true, do not state a claim for discrimination for the same reason as those in *Gabrielle*: they are "so vague and unspecific that [they] cannot provide a basis to determine whether that conduct was severe, pervasive, and objectively offensive harassment." (*Compare* Doc. 15 ¶¶ 52-55, 67-68, 73-80, *with Gabrielle*, 315 F.3d at 822.)

Plaintiff alleges that, on one occasion, another student attempted to talk to her about Student 1, and this interaction amounts to "severe, pervasive, and objectively offensive" harassment. (Doc. 33 at 4-5.) In their Motion, Defendants explained that this interaction does not constitute sexual harassment and is not sufficiently severe, pervasive, or objectively offensive. (Doc. 28 at 10-11.) Plaintiff does not assert that this single instance of alleged harassment constitutes severe, pervasive, and objectively offensive conduct, nor does she argue that the interaction itself was harassing or sexual in nature. (Doc. 33 at 4-5.) She argues only that the interaction qualifies as sexual harassment because it was done in the "context" of "ongoing" sexual harassment by other students. (*Id.*) Courts have rejected this argument. For instance, in *Hunter v. Barnstable School District*, 456 F. Supp. 2d 255, 264 (D. Mass. 2006), the plaintiff argued that a school caused her to be sexually harassed by forcing her to interact with, even "high five," her alleged assailant in gym class. *Id.* The *Hunter* court rejected that argument, concluding that, while the plaintiff was forced to have "ongoing" contact with her alleged assailant in gym class, those interactions were not sexual or harassing in nature and, thus, did not qualify as "sexual harassment" under Title IX. *Id.* In *Wilson v. Beaumont Independent School District*, 144 F. Supp. 2d 690, 695 (E.D. Tex. 2001), the court concluded that a female student's "continued exposure" to her alleged perpetrator, even if distressing, did not amount to sexual harassment, let alone severe and pervasive harassment required under Title IX. Plaintiff attempts to distinguish these cases based on facts alone (Doc. 33 at 4-5), but they are legally on point.

Further, courts have concluded that calling a female high-school student a "slut" or "whore" does not rise to the level of severe and pervasive harassment. *Vidovic v. Mentor City Sch. Dist.*, 921 F. Supp. 2d 775, 798 (N.D. Ohio 2013). Plaintiff argues that her being called a "slut" is more severe and pervasive than the girl in *Vidovic*, who was called a "slut," "lesbian,"

4

and "whore," because that name-calling "did not occur in the context of an allegation of sexual assault and rape." (Doc. 33 at 4.) Plaintiff does not explain why the "context" of her alleged harassment is more severe than that of the victim in *Vidovic*, who sadly committed suicide in response to such harassment. *Vidovic*, 921 F. Supp. 2d at 781-84.

Plaintiff cites an unpublished case from the Second Circuit, *Doe v. East Haven Board of Education*, 200 Fed. App'x 46, 48-49 (2d Cir. 2006), for the proposition that being called a "slut" or similar name once following an allegation of sexual assault constitutes pervasive harassment. *East Haven* does not support this argument. There, the plaintiff was called names like slut, bitch, and liar "every day" after she reported an alleged rape. The *East Haven* court concluded that such harassment was sufficiently pervasive. *Id.* Here, Plaintiff alleges one instance of being called a "slut or whore" in the hallway at school. (Doc. 15 ¶ 75.) That type of isolated name-calling, even in the Second Circuit, is not "sufficiently continuous and concerted" to constitute pervasive harassment. *Lopez v. Webster Cent. Sch. Dist.*, 682 F. Supp. 2d 274, 285 (W.D.N.Y. 2010). Relatedly, and as also recognized in the Second Circuit, a single instance of one-on-one harassment is not sufficiently severe, pervasive, and objectively offensive unless it is "serious enough to have the systemic effect of denying the victim equal access to an educational program or activity. *Estate of D.B. v. Thous. Is. Cent. Sch. Dist.*, 327 F. Supp. 477, 530 (N.D.N.Y. 2018). Here, Plaintiff does not even contend that this single instance of being called a "slut or whore" in the hallway systemically deprived her of educational opportunities at BHS.

### III. Plaintiff has not plausibly alleged that District officials were deliberately indifferent.

Plaintiff has not plausibly alleged that District officials were deliberately indifferent—meaning they consciously acquiesced to conduct in a manner that is clearly unreasonable—to allegations of harassment. (Doc. 28 at 12-14.) Plaintiff admits that "no particular response is required," and that "the school district is not required to eradicate all sexual harassment," but

5

argues that Defendants did not act reasonably in response to her allegations. (Doc. 33 at 8-9.) Plaintiff's own allegations belie this argument. The allegations, taken as true, show that District officials promptly and reasonably attempted to address Plaintiff's concerns, including:

- Promptly returning Parent's phone calls and voicemails to District officials on or around November 7, 2018 (Doc. 15 ¶¶ 34-68);

- Speaking over the phone and meeting with Plaintiff and Parent several times to discuss the alleged assault, alleged harassment, and an education plan to enable Plaintiff to continue her coursework (*id.* ¶¶ 12-18, 22-23, 30-35, 37-40, 44, 52-57, 61-64, 67-70, 73-82, 86-88, 90-91, 94-98, 103-04, 110);

- Suspending Student 1 shortly after Parent reported the alleged assault and harassment and requested that Student 1 be suspended (*id.* ¶¶ 61-64);

- Removing Student 1 from BHS immediately when staff discovered that Student 1 had erroneously returned to BHS during his suspension and assuring Plaintiff and Parent that the District would cite Student 1 for trespassing if he returned to campus again (*id.* ¶¶ 90-91, 97-98);

- Offering Plaintiff alternatives to continuing her coursework as usual at BHS given the alleged assault and harassment (*id.* ¶¶ 31-33, 52-55);

- Issuing a no-contact order between Plaintiff and Student 4 in response to Student 4 contacting Plaintiff on social media (*id.* ¶¶ 110); and

- Intervening when another student was "asking" Plaintiff about Student 1's whereabouts during math class (*id.* ¶¶ 86).

While Parent may not have been satisfied with the options the District provided, her preference for a different solution does not state a claim based on deliberate indifference. *See, e.g.*, *Rost*, 511 F.3d at 1124 ("The fact that Ms. Rost rejected alternatives the district provided . . . does not reflect on the appropriateness of the district's responses . . . ."); *Deweese v. Bowling Green Indep. Sch. Dist.*, 709 Fed. App'x 775, 778 (6th Cir. 2017) (school's remedial plan for sexual assault victim was not clearly unreasonable even though not "preferred choice"); *Yap v. Oceanside Union Free Sch. Dist.*, 303 F. Supp. 2d 284, 295 (E.D.N.Y. 2004) (not deliberately indifferent for refusing to transfer student experiencing race-based harassment at school).

6

Further, as the Tenth Circuit concluded in *Rost*, it is not unreasonable to forego disciplining a child who is then under police investigation. *Rost*, 511 F. 3d at 1121. (Doc. 28 at 13.) Plaintiff argues, incorrectly, that the *Rost* case is "unavailing." (Doc. 33 at 9-10.) In *Rost*, a school principal opted not to investigate alleged assaults largely because those assaults occurred off-campus. *Rost*, 511 F.3d at 1118. The *Rost* court concluded that this decision was not unreasonable, stating: "[w]e do not think that the district can be faulted for letting [the investigating officer] take the lead in this very serious situation." *Id.* at 1121. Plaintiff's allegations, taken as true, show that Mr. Smith and other officials chose to let investigating officers "take the lead in this very serious situation." (Doc. 28 at 13; Doc. 15 ¶ 18-21.) This decision, under *Rost*, was not unreasonable. Indeed, Plaintiff concedes in her Response that she is not entitled to specific remedial measures anyway (Doc. 33 at 9), and there is no allegation—nor could there be—that suspending Student 1 the prior school year would have prevented Student 1 from allegedly assaulting Plaintiff at her home months later.

**IV.   Plaintiff has not plausibly alleged that the District engaged in retaliatory conduct.**

Plaintiff has not plausibly alleged that District officials engaged in retaliatory conduct in violation of Title IX, as there is no allegation, or basis to infer from the allegations, that the District was motivated by retaliatory animus. (Doc. 28 at 12-15.)

In her Response, Plaintiff concedes that she must allege retaliatory animus, yet fails to identify any allegation from which this Court could infer that District officials had such animus. (Doc. 33 at 11-12.) Instead, Plaintiff alleges that, shortly after she alleged harassment, District officials offered her a plan she initially did not like and failed to suspend her alleged perpetrator sooner (*id*. at 12), which, as Plaintiff alleges, it did the day after Parent reported the alleged assault. (Doc. 28 at 15.) Plaintiff also argues that the District retaliated against her by "refusing"

7

Parent's requests for a 504 Plan and IEP—an allegation that does not appear in her Complaint (*see* Doc. 15 ¶¶ 146-55). (Doc. 33 at 12.) There is no allegation or inference, which there must be, that these actions constitute "intentional conduct aimed at inflicting injury or harm." *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1091 (10th Cir. 2007).[3]

## V.   The individual defendants are entitled to qualified immunity.

Plaintiff has not plausibly alleged that the individual defendants were deliberately indifferent to allegations of harassment. (Doc. 28 at 15-20.) In Response, Plaintiff parrots the same vague and conclusory allegations from her Complaint concerning Superintendent Chris Fiedler, that Parent called his "office" and that he "would have known" of the alleged harassment from this call, and BHS Principal Shelly Genereux, that she "would have known" of the alleged harassment from Ms. Weaver or Mr. Smith. (Doc. 33 at 13.) These allegations, taken as true, do not "raise a right to relief beyond the speculative level," *Twombly*, 550 U.S. at 555, and there is no allegation—as there must be—that Dr. Fiedler or Ms. Genereux consciously ignored alleged harassment or intended for discrimination to occur. *See Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 141 (2d Cir. 1999) (a defendant must intend for discrimination to occur).

As to Desiree Quintanilla, Plaintiff does not address the fact, as Defendants noted in the Motion, that Plaintiff fails to mention Ms. Quintanilla in any allegations supporting the Section 1983 claims. (Doc. 28 at 18; Doc. 15 ¶¶ 156-97.) For that reason alone, Plaintiff fails to plausibly allege, as she must, how and why Ms. Quintanilla is liable for discrimination. *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1159, 1163 (10th Cir. 2007). Instead, Plaintiff cobbles together several factual allegations involving Ms. Quintanilla (Doc. 33 at 13-14), none of which, separately or together, plausibly state a claim predicated on deliberate indifference. These

---

[3] Plaintiff again attempts to argue that Mr. Sullivan is not an appropriate person under a strained reading of *Rost*. But, as noted, this argument is incorrect. (*See* Argument § I, *supra*, at 2.)

allegations, taken as true, show that Ms. Quintanilla promptly returned Parent's initial call on November 7 and spoke with Parent several times to discuss the alleged assault, alleged harassment, and an education plan so Plaintiff could continue her coursework. (Doc. 28 at 18; Doc. 15 ¶¶ 61-64, 69-82, 94-98.) Plaintiff now argues that Ms. Quintanilla "refused" Parent's request for a Section 504 Plan or IEP and would not discuss Student 1's suspension. (Doc. 33 at 14.) But, as explained, Plaintiff has not cited any authority stating that district officials are required to share information concerning another student's suspension or that "refusing" to evaluate a child for a 504 Plan or an IEP plausibly states a claim based on deliberate indifference to sexual harassment.

Plaintiff argues that Mr. Smith and Ms. Weaver's response to her allegations of assault was "minimalist" and unreasonable. (Doc. 33 at 14.) The Complaint alleges that Smith and Weaver each returned Parent's initial call immediately, met with Parent and Plaintiff several times to discuss the alleged assault and harassment and education and safety plan for Plaintiff, suspended Student 1 the day after Parent reported the alleged assault, and issued a no-contact order between Student 4 and Plaintiff in response to Student 4's social media message to Plaintiff. (Doc. 28 at 12-13, 19-20.) These allegations do not satisfy the threshold pleading requirement to overcome Smith and Weaver's qualified immunity. Plaintiff also asserts that Mr. Smith was deliberately indifferent because he told Parent the he would need the names of those allegedly harassing Plaintiff to respond. (Doc. 33 at 9.) It is not unreasonable to ask that Plaintiff provide names of those allegedly harassing her so that Mr. Smith and other officials can contact students necessary to remediate the harassment.

## VI. Plaintiff has failed to plausibly allege facts supporting equitable relief.

Plaintiff lacks standing to recover equitable relief because she has not alleged a future injury, and she has not plausibly alleged a basis for equitable relief because her equitable claims

9

are derivative of her Section 1983 claims, none of which are viable. (Doc. 28 at 20-21.)

In Response, Plaintiff does not contest that her equitable claims are derivative of her Section 1983 claims but asserts, incorrectly, that she does not need to allege future harm to recover equitable relief. (Doc. 33, at 15.) In support, she cites an inapposite federal case from West Virginia, *Rex v. W. Va. Sch. of Osteopathic Med.*, 119 F. Supp. 3d 542 (D. W. Va. 2015). There, the court determined that the plaintiff had sufficiently alleged an Equal Protection claim and mentioned that the plaintiff "seeks injunctive relief." *Id.* at 553. In a footnote, the court stated that the plaintiff could proceed on her equitable claim even though she had not alleged facts warranting a preliminary injunction. *Id.* n.8. The court did not conclude that a plaintiff can recover equitable claims without, as Plaintiff fails to do here, alleging future harm. That conclusion would contradict decades of case law that courts lack jurisdiction over equitable claims where the plaintiff has not alleged future harm. (*See* Doc. 28, at 20-21.)

## CONCLUSION

For these reasons, and as stated more fully in Defendants' Motion to Dismiss (Doc. 28), Defendants respectfully request that the Court grant the Motion and dismiss all claims.

Respectfully submitted this 26th day of July 2019.

*s/Elliott V. Hood*
M. Gwyneth Whalen
Elliott V. Hood
CAPLAN AND EARNEST LLC
3107 Iris Avenue, Suite 100
Boulder, Colorado 80301
303-443-8010
gwhalen@celaw.com; ehood@celaw.com
Attorneys for Defendants

## CERTIFICATE OF SERVICE

      I hereby certify that on July 26, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Igor Raykin, Esq.
Michael Nolt, Esq.
igor@coloradolawteam.com
michael@coloradolawteam.com
Attorneys for Plaintiff

                                                        *s/Shelley McKinstry*
                                                        Shelley McKinstry